**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **HANNAH YOUNG, ARIANA** | : | |
| **PALMACCIO, FIREARMS POLICY** | : | |
| **COALITION, INC.,** *and* **NATIONAL** | : | |
| **RIFLE ASSOCIATION OF AMERICA,** | : | |
| **Plaintiffs,** | : | |
| | : | **No. 3:24-cv-274** |
| **v.** | : | |
| | : | **Judge Stephanie L. Haines** |
| **JAMES OTT, BRIAN SZUMSKI,** *and* | : | |
| **COLONEL CHRISTOPHER PARIS,** | : | **Electronically Filed Document** |
| **Defendants.** | : | |

**BRIEF IN OPPOSITION TO PLAINTIFFS' MOTION FOR PRELIMINARY**
**INJUNCTION, EXPEDITED CONSOLIDATION WITH THE MERITS OR, IN THE**
**ALTERNATIVE, SUMMARY JUDGMENT**

Defendant Colonel Christopher Paris ("Defendant Paris"), through counsel, hereby submits

this Brief in Opposition to the Motion for a Preliminary Injunction, Expedited Consolidation with

the Merits or, in the Alternative, Summary Judgment [ECF 27] filed by Hannah Young, Ariana

Palmaccio, the Firearms Policy Coalition, Inc., and the National Rifle Association (collectively

"Plaintiffs"). For reasons that follow, Defendant respectfully requests that the Plaintiffs' Motion

be denied.

Respectfully submitted,

DAVID W. SUNDAY, JR.
Attorney General

By:    *s/ Amelia J. Goodrich*
_____
AMELIA J. GOODRICH
Deputy Attorney General
Attorney ID: 327192

Office of Attorney General
1251 Waterfront Place, Mezzanine Level
Pittsburgh, PA 15222
Phone: (412) 510-1418
Email: agoodrich@attorneygeneral.gov

NICOLE R. DITOMO
Chief Deputy Attorney General
Civil Litigation Section

Date:  March 26, 2025

*Counsel for Colonel Christopher Paris*

## INTRODUCTION

Recently, the Third Circuit called for "caution" before enjoining democratically-enacted gun laws, particularly when "federal courts are asked to block states from enforcing their laws" because it "threatens federalism and the separation of powers[.]"*Delaware State Sportsmen's Ass'n, Inc. v. Delaware Dep't of Safety & Homeland Sec.*, 108 F.4th 194, 205 (3d Cir. 2024), (citing, *inter alia*, *Younger v. Harris*, 401 U.S. 37, 53-54 (1971)). But Plaintiffs ask this Court to throw caution to the wind by upending a decades-long status quo at the preliminary injunction phase.

Plaintiffs' proffered evidence in support of their requested injunction is weak, intentionally vague, and does not support upending a decades-old status quo during the pendency of this litigation. The sweeping injunctive relief Plaintiffs seek is all the more astonishing in light of the fact that the Firearms Policy Coalition repeatedly took the position in *Lara* that enjoining the Commissioner from arresting 18-to-20-year-olds for openly carrying during public emergencies was all that was required to vindicate their constitutional rights. *See, e.g.*, *Lara*, 3d Cir. Dkt. 21-1832, Reply Br. at 4 (3d Cir. ECF 38) ("If the Commissioner and his department were enjoined from arresting 18-to-20-year-olds for openly carrying firearms during an emergency … that would also relieve Plaintiffs' injuries.") (emphasis added); *Id.*, Reply Letter Br. at 10 (3d Cir. ECF 63) ("… this Court can provide Plaintiffs effective relief by enjoining the Commissioner from arresting 18-to-20-year-olds for openly carrying firearms during an emergency…") (cleaned up, emphasis added)).[1] In a 180 degree reversal of their position in *Lara*, the Firearms Policy Coalition now

---

[1] *Lara*, its posture and outcome are relevant to the instant matter for two reasons. First, *Lara* addresses Second Amendment issues specific to 18 to 20 year old individuals. Second, Plaintiff Firearms Policy Coalition, Inc. is a Plaintiff in both *Lara* and the instant matter. A copy of the Reply Brief of Plaintiffs-Appellants filed in the Third Circuit in *Lara* is attached hereto and marked as Exhibit A.

incredibly claims a constitutional crisis so dire that only an immediate change to a state law enforcement practices and concealed carry licensure procedures could effectively protect their rights. And they make that claim despite the fact that neither individual plaintiff alleges that she owns a concealable firearm.

The United States Supreme Court has instructed that a "State c[an] lawfully eliminate one kind of public carry—concealed carry—so long as [it] le[aves] open the option to carry openly." *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 597 U.S. 1, 59 (2022). Because the option to open carry is available to Plaintiffs throughout the Commonwealth, and no individual plaintiff has demonstrated that she owns a concealable firearm, there is no urgent need for the sweeping injunctive relief they seek here. Recognizing this, one Pennsylvania District Court has already denied preliminary injunctive relief to plaintiffs bringing claims remarkably similar to those in the instant case. *See Brown v. Paris*, 1:24-cv-1016 (Conner, J., M.D. Pa.) [ECF 20]. This Court should follow suit.

Plaintiffs also seek to expedite this matter, and have their Motion for a Preliminary Injunction treated as a Motion for Summary Judgment, or alternatively, forego any discovery and treat a hearing on the preliminary injunction as a trial. Plaintiffs' request should be denied. This is a complex issue that requires jurisdictional, factual, and expert discovery. Plaintiffs' Motion for a Preliminary Injunction, Expedited Consolidation with the Merits or, in the Alternative, Summary Judgment [ECF 27] should be denied.

## **PROCEDURAL HISTORY**

Plaintiffs initiated this single-count civil rights action pursuant to 42 U.S.C. §1983 by Complaint filed on November 11, 2024. [ECF 1]. Plaintiffs filed an Amended Complaint on December 20, 2024. [ECF 26]. Plaintiffs' suit claims that aspects of Pennsylvania law violate the

purported Second Amendment rights of 18-to-20-year-olds. Specifically, the Amended Complaint alleges that Sections 6102 (Definitions), 6106 (relating to carrying a firearm in a vehicle), 6108 (relating to carrying a firearm in Philadelphia) and 6109 (relating to the issuance of licenses to carry a concealed firearm) of Pennsylvania's Uniform Firearms Act ("UFA"), 18 Pa.C.S.A. §6101, *et seq.*, violate the Second Amendment and Fourteenth Amendment by impermissibly regulating the issuance of licenses allowing 18-20 year old individuals to carry concealed firearms because there is no "historical tradition that delimits the outer bounds of the right to keep and bear arms," and because the UFA otherwise restricts the carrying of firearms in the Commonwealth of Pennsylvania. [ECF 26 at ¶¶94, 96-101] (*quoting N.Y. State Rifle & Pistol Ass'n v. Bruen*, 597 U.S. 1, 19 (2022)).

Simultaneous with the filing of their Amended Complaint, Plaintiffs filed a Motion for Preliminary Injunction, Expedited Consolidation with the Merits or, in the Alternative, Summary Judgment (hereinafter "Motion for PI"). [ECF 27]. Plaintiffs' Motion for PI broadly requests that "Defendants be enjoined from continuing to enforce the challenged provisions." [ECF 27-8].[2] The Motion for PI seeks to avoid discovery, asking that a trial on the merits be consolidated with the evaluation of Plaintiff's requested preliminary injunction or, alternatively asks the Court to treat their Motion for PI as a motion for summary judgment. [ECF 27 at 23-24].[3]

---

[2] Though Plaintiffs fail to specify the "challenged provisions" in their Proposed Order, Defendant Paris construes the request for injunctive relief as being applicable to the enforcement of 18 Pa.C.S.A. §§6102, 6106, 6108 and 6109.

[3] Notably, a similar request for injunctive relief was filed in a case before the United States District Court for the Middle District of Pennsylvania, and that Motion for Preliminary Injunction was **denied**. *See*, *Taylor Brown, et al. v. Col. Christopher Paris, et al.*, No. 1:24-cv-01015, Doc. 20 (M.D. Pa. July 29, 2024). In that case, the court denied the request for a preliminary injunction noting, *inter alia*, "none of the conduct described in [P]laintiffs' motion implicate[d] 'an urgent need for speedy action to protect' their rights[.]'" *Id.* at 4 (quoting *Delaware State Sportsmen's Ass'n, Inc. v. Delaware Dep't of Safety & Homeland Sec.*, 108 F.4th 194, 206 (3d Cir. 2024)).

Defendant Paris moved to stay the instant matter, pending the outcome of *Lara*. [ECF 31]. A stay was imposed and extended until the Third Circuit issued its Mandate in *Lara*. [ECFs 43, 46 & 51]. This Honorable Court then issued an Order lifting the stay and setting a briefing schedule with respect to Plaintiff's Motion for PI. [ECF 51].

Defendant Paris now submits this brief in opposition to Plaintiffs Motion for PI, requesting that Plaintiffs' request for a preliminary injunction be denied. Defendant Paris also opposes Plaintiffs' request to proceed immediately to a resolution of Plaintiffs' Second Amendment claims on the merits without allowing for the defendants to engage in any discovery.

## **STATEMENT OF FACTS**

Plaintiffs Hannah Young and Ariana Palmaccio (collectively the "Individual Plaintiffs") allege that they are "responsible, peaceable, law-abiding citizen[s] with no history of mental illness, violent behavior, or other conduct posing any threat or danger to…the public." [ECF 26 at ¶¶16, 25]. Both of the Individual Plaintiffs are over the age of 18 but under the age of 21 and currently possess a firearm. *Id*. at ¶¶14-15, 23.  Individual Plaintiffs allege that they desire to "carry a handgun in public for self-defense including but not limited to concealed upon [their] person throughout the State, while traveling in a vehicle, and while traveling in and through the city of Philadelphia," and within 1000 feet of schools. *Id*. at ¶¶17, 26, 73, 91.

Palmaccio notably does not aver that she currently owns a firearm of any kind. Palmaccio Decl. at ¶ 3 [ECF 27-5]. Young at least avers that she currently owns "a firearm," but conspicuously fails to state whether she specifically owns a handgun or other concealable firearm. Young Decl. at ¶ 3 [ECF 27-4]. That neither Palmaccio nor Young have averred that they own

concealable firearms is unsurprising, given that federal law prohibits federally-licensed dealers from selling handguns to under 21-year-olds. 18 U.S.C. § 922(b)(1).

Plaintiffs Firearms Policy Coalition[4] and National Rifle Association of America (collectively "Organizational Plaintiffs") allege that they are nonprofit corporations that engage in activities organized around the protection of Second Amendment rights. *Id*. at ¶¶33-36. Organizational Plaintiffs allege that they have Pennsylvania-resident members between the ages of 18 and 20 years of age, who are legally eligible to possess and acquire firearms, and who wish to concealed carry those firearms. *Id*. at ¶¶34, 36. Organizational Plaintiffs allege that they pursue this litigation on behalf of those members and Individual Plaintiffs. *Id*.

The Plaintiffs allege that because Individual Plaintiffs, and many members of Organizational Plaintiffs, are at least 18 and under 21 years of age they are prohibited from carrying a firearm as they please due to the operation and interplay of three sections under the UFA. *See generally id*.  Plaintiffs complain that the following statutes violate their Second Amendment rights:[5]

> **18 Pa. C.S. § 6106**, which (with numerous exceptions) prohibits the carrying of firearms in vehicles, and the carrying of concealed firearms without a license;

---

[4] Firearms Policy Coalition is a Plaintiff in several cases of relevance to the one currently before the court. *See Brown v. Paris*, M.D.Pa., Docket No. 1:24-cv-1015 (challenging UFA Sections 6106, 6108, and 6109); *Suarez v. Paris*, M.D. Pa., Docket No. 1:21-CV-710 (challenging UFA Sections 6101, 6107, and 6108); *Lara v. Evanchick,* W.D.Pa., Docket No. 2:20-cv-1582 (challenging UFA provisions that effectively ban 18 to 20 years olds from opening carrying during a declared state of emergency).

[5] Plaintiffs also indicate a concern about "arrest, prosecution, incarceration, and/or fines under 18 Pa.C.S. §[]6102(2). *See* [ECF 26 at ¶94]. The indicated section of the UFA is entitled "Definitions," contains no subsection (2), and does not provide elements for any prosecutable violation under the UFA – it provides definitions for specific terms employed within the UFA.

**18 Pa. C.S. § 6108**, which (with numerous exceptions) prohibits the carrying of firearms on the public streets and upon public property in Philadelphia without a license; and

**18 Pa. C.S. § 6109**, which requires individuals to be 21 years of age to obtain the license mentioned in Sections 6106 and 6108.

## **ARGUMENTS**

### I.  PRELIMINARY INJUNCTIONS ARE EXTRAORDINARY AND DRASTIC REMEDIES AND PLAINTIFFS' MOTION FOR SUCH A REMEDY SHOULD BE DENIED.

A preliminary injunction "is an extraordinary remedy[ ] [that] should be granted only in limited circumstances," and unless the need for one in a particular case outweighs the risks, the court should **not** grant one. *Mallet & Co. v. Lacayo*, 16 F.4th 364, 391 (3d Cir. 2021) (internal quotation marks omitted). A preliminary injunction is not a "shortcut to the merits"; rather, it is "designed to protect the court's ability to see the case through." *Delaware State Sportsmen's Ass'n, Inc. v. Delaware Dep't of Safety & Homeland Sec.,* 108 F.4th 194, 203 (3d Cir. 2024), *cert. denied sub nom. Gray v. Jennings*, No. 24-309, 2025 WL 76443 (U.S. Jan. 13, 2025). Put differently, a preliminary injunction is designed to "preserve the status quo" while litigation proceeds. *Id.* at 205.

A party seeking a preliminary injunction must show: (1) a likelihood of success on the merits; (2) that it will suffer irreparable harm if the injunction is denied; (3) that granting preliminary relief will not result in even greater harm to nonmoving parties; and (4) that the public interest favors such relief. *Arrowpoint Cap. Corp. v. Arrowpoint Asset Mgmt., LLC*, 793 F.3d 313, 318–19 (3d Cir. 2015). The injunction should be issued only if the plaintiff produces enough evidence to sufficiently convince the court that all four factors favor preliminary relief. *Opticians Ass'n v. Indep. Opticians*, 920 F.2d 187, 192 (3d Cir. 1990). The "failure to establish any element [of that test] renders a preliminary injunction inappropriate." *NutraSweet Co. v. Vit-Mar Enters. Inc.,* 176 F.3d 151, 153 (3d Cir. 1999). Preliminary injunctions should issue only in a "clear and

plain case." *Bramble v. Wetzel*, 2021 WL 3190710, at \*2 (M.D. Pa. 2021). In considering an application for a preliminary injunction, "to doubt is to deny." *Madison Square Garden Corp. v. Braddock*, 90 F.2d 924, 927 (3d Cir. 1937).

On top of these considerations, the Third Circuit recently clarified how district courts should balance the equities when deciding whether to maintain the status quo in Second Amendment cases. The Third Circuit emphasized that when the government is a party, its interests "merge" with the public's interests, highlighting that "'[t]here is always a public interest in prompt execution' of the laws." *Delaware State Sportsmen's Ass'n*, 108 F.4th at 205 (quoting *Nken v. Holder*, 556 U.S. 418, 436 (2009)). The Third Circuit thus called for "caution" before enjoining democratically-enacted gun laws, particularly when "federal courts are asked to block states from enforcing their laws" because it "threatens federalism and the separation of powers[.]" Id. (citing, *inter alia*, *Younger v. Harris*, 401 U.S. 37, 53-54 (1971)).

Plaintiffs' Motion falls exceedingly short of justifying the drastic remedy they seek. Plaintiffs bear the burden of proving irreparable injury; "yet they ask [this Court] to lift that burden from their shoulders by presuming all constitutional harms irreparable." *Delaware State Sportsmen's Ass'n,* 108 F.4th at 203.

### A.    Plaintiffs have not established a likelihood of success on the merits

Plaintiffs' burden is especially great in the context of a facial attack on a statute's constitutionality. A facial challenge is the "most difficult challenge to mount successfully," as it requires a plaintiff to demonstrate "no set of circumstances" under which the law is valid. *Rahimi*, 602 U.S. at 693; *see also United States v. Salerno*, 481 U.S. 739, 745 (1987). Plaintiffs cannot carry that burden at this procedural juncture.

1. *The Supreme Court has explicitly blessed concealed-carry restrictions that do not prohibit open carry.*

The Supreme Court has recognized that the right to keep and bear arms is not unlimited, and that the Second Amendment does not confer "a right to keep and carry any weapon whatsoever in any manner whatsoever and for whatever purpose." *District of Columbia v. Heller*, 554 U.S. 570, 595, 626 (2008). "Properly interpreted, the Second Amendment allows a 'variety' of gun regulations." *Bruen*, 597 U.S. at 80 (Kavanuagh, J., concurring) (quoting *Heller*, 554 U.S. at 636.). Critically, the *Bruen* Court was unambiguous that "[s]tates could lawfully *eliminate* one kind of public carry so long as they left open the option to carry openly." *Id.* at 59 (emphasis added). This analytical starting point is crucial where, as here, individuals seek not just to bear arms in general, but to do so in a particular manner. *See* [ECF 26 ¶ 61] (recognizing that "the Commonwealth does not generally bar 18-to-20-year-olds from carrying firearms openly in public").

Unlike the licensing scheme at issue in *Bruen* or the federal bar on possession that the Third Circuit addressed in *Range v. Attorney General*,[6] the challenged statute here does not effectively preclude the exercise of Second Amendment rights. Individuals without licenses—including individuals between the ages of 18 and 21—may purchase firearms, possess firearms, and carry firearms openly in public. *Lara*, 125 F.4th at 431 ("Ordinarily, Pennsylvanians without a concealed-carry license may carry openly"). And the Plaintiffs recognize as much. [ECF 26 ¶ 61]. Accordingly, when Plaintiffs point to the UFA's age restriction having "a real and practical impact on the constitutionally protected right to carry a firearm in public for self-defense," [*id.* ¶ 60], it is

---

[6] *See Bruen*, 597 U.S. at 70 ("We know of no other constitutional right that an individual may exercise only after demonstrating to government officers some special need."); *Range v. Attorney General*, 124 F.4th 218, 231 (3d Cir. 2024) (striking down as-applied a "status-based lifetime ban on firearm possession").

a real and practical impact that the Supreme Court has expressly indicated is tolerable to the Second Amendment.

### 2. *Lara did not resolve the merits question at issue here*

As Plaintiffs are surely aware, courts have split over whether age restrictions generally survive constitutional scrutiny under *Bruen* and *Rahimi*.[7] Wrapping themselves in *Lara*, Plaintiffs situate themselves firmly on one side of this split and thus apparently believe that relief in this case is a *fait accompli*. [ECF 27–1 at 11]. No so.

*Lara* addressed a *narrow question*—whether the confluence of the UFA's age restriction and another provision to "effectively ba[n] 18-to-20-year-olds" from carrying a firearm in *any* manner "outside their homes *during a state of emergency*" is consistent with the Second Amendment. *Lara*, 125 F.4th at 431 (emphasis added); 18 Pa. C.S. § 6107(a). There, the Third Circuit did not wrestle with the availability of *concealed carry licenses* as opposed to open carry discussed *supra* because it did not have to. Instead, the claims at issue in *Lara* concerned a particular situation in which ostensibly *no public carry* was consistent with the UFA based on the intersection of three of its provisions. *Id.* at 432; ("the combined effect of [three statutes] … *together with* the then-ongoing state of emergency, *foreclosed* [18- to 20-year-olds] from carrying firearms in public places") (emphases added).

---

[7] *Compare Worth v. Jacobson*, 108 F.4th 677, 698 (8th Cir. 2024) (striking down under *Bruen* Minnesota's ban on *all carry* by 18- to 20-year-olds), *with Rocky Mountain Gun Owners v. Polis*, 121 F.4th 96, 128 (10th Cir. 2024) ("Laws or regulations imposing … a minimum purchase age of 21 … on the commercial sale or purchase of firearms … remain outside of the scope of the Amendment's protections"); *Nat'l Rifle Ass'n v. Bondi*, -- F.4th --, 2024 WL 815734, at *16 (11th Cir. Mar. 14, 2025) ("The Florida law that prohibits minors from purchasing firearms does not violate the Second and Fourteenth Amendments because it is consistent with our historical tradition of firearm regulation.").

Plaintiffs here ask a much broader and much different question: whether States are constitutionally proscribed from denying concealed-carry licenses to 18-to-20-year-olds where the law permits that same age group to carry *openly*. As discussed, *Bruen* squarely resolved that question: "[s]tates could lawfully *eliminate* one kind of public carry so long as they left open the option to carry openly." 597 U.S. at 59 (emphasis added).

### 3.   The UFA's restriction on concealed carry by minors is permissible under Bruen and Rahimi

In *Rahimi*, the Supreme Court provided a course correction to those who had "misunderstood" its methodology in Second Amendment cases, believing that all modern regulations had to be "identical to ones that could be found in 1791." 602 U.S. at 692. Rather, "the appropriate analysis is whether the challenged regulation is consistent with *the principles that underpin our regulatory tradition*." *Id.* (emphasis added) (citing *Bruen*, 597 U.S. at 26–31); *see also id.* at 740 (Barrett, J., concurring) ("'Analogical reasoning' under *Bruen* demands a wider lens: Historical regulations reveal a principle, not a mold."). A regulation need not be a "dead ringer" or a "historical twin" to survive Second Amendment scrutiny under *Bruen*. *Id.*

The Court then reiterated its guidance: the key questions are "first, whether modern and historical regulations impose a comparable burden on the right of armed self-defense, and second, whether that regulatory burden is comparably justified." *Id.* (citing *Bruen*, 597 U.S. at 29). Both "[w]hy and how the regulation burdens the right are central to this inquiry. . . if laws at the founding regulated firearm use to address particular problems, that will be a strong indicator that contemporary laws imposing similar restrictions for similar reasons will fall within a permissible category of regulations." *Id*. The Second Amendment does not require "a law trapped in amber," *id.* at 691, nor must courts assume that "founding-era legislatures maximally exercised their power to regulate." *Id.* at 739–40 (Barrett, J., concurring).

Given the facial nature of their suit and the conduct they describe in their amended complaint, Plaintiffs' challenge concerns a regulation that is "analogous enough" to precursors in American law.

a.  States have imposed greater burdens on minors'' Second Amendment
    rights since the dawn of the Republic

When diving into the historical record, this Court need not work from a blank slate. "[F]ounding-era legislatures categorically disarmed groups whom they judged to be a threat to public safety." *Kanter v. Barr*, 919 F.3d 437, 458 (7th Cir. 2019) (Barrett, J., dissenting); *see also Lara v. Commissioner Pa. State Police*, 97 F.4th 156, 163 (3d Cir. 2024) (Krause, J., dissenting from the denial of en banc). Federal district courts have thus found "copious sources discussing the historical basis of laws" curtailing individuals' rights to bear arms by complete disarmament based on membership in a class that may pose a danger to society. *United States v. Gould*, 672 F.Supp.3d 167, 183 (S.D. W.Va. 2023) (citing Robert Dowlut, *The Right to Arms: Does the Constitution or the Predilection of Judges Reign?*, 36 OKLA. L. REV. 65, 96 (1983)). "Colonial and English societies of the eighteenth century" routinely "excluded *infants*, idiots, lunatics and felons [from possessing firearms]." Dowlut, *The Right to Arms*, 36 OKLA. L. REV. at 96 (emphasis added).

With respect to the question of burden in this case, then, two critical points frame the inquiry. *First*, if legislatures could entirely eliminate the right to keep and bear arms based on age, then lesser infringements—such as allowing minors to open carry but forbidding them from engaging in concealed carry—must be permissible. *Cf. Rahimi*, 602 U.S. at 699 ("[I]f imprisonment was permissible to respond to the use of guns to threaten the physical safety of others, then the lesser restriction of temporary disarmament … is also permissible.") *Second*, because the UFA allows for open carry by minors, the modern regulation is in fact less restrictive than age-based regulations at the Founding.

When Americans ratified the Second Amendment, a person was considered an "infant" or "minor" at common law until they were 21 years of age. *Bondi*, 2025 WL 815734, at *6 (citing, *inter alia*, 1 ZEPHANIAH SWIFT, A SYSTEM OF THE LAWS OF THE STATE OF CONNECTICUT 213 (1795); 1 WILLIAM BLACKSTONE, COMMENTARIES ON THE LAWS OF ENGLAND 463 (George Sharswood ed., 1893)). In this paradigm, parents essentially enjoyed "total … control over children's lives." *Brown v. Ent. Merchs. Ass'n*, 564 U.S. 786, 830 (2011) (Thomas, J., dissenting). Minors could not enter into contracts and they lacked disposable income. *See Bondi*, 2025 WL 815734, at *7 (citations omitted).

Juxtaposed with the extensive common law burdens on Second Amendment rights known to the Founding generation, the UFA's modest restriction passes muster. Far from effectively barring firearm possession or purchase by minors, Pennsylvania simply limits one type of carry—concealed carry—to individuals who have obtained licenses and, *ipso facto*, passed a background check. This limitation organically expires, *cf. Range*, 124 F.4th at 231 (emphasizing that *Rahimi* authorized only "temporary disarmament"); is easy to administer, *cf. Rahimi*, 602 U.S. at 701 (opining that "[r]esponsible is a vague term" and "[i]t is unclear what such a rule would entail"); and does not infringe upon the central component of the Second Amendment right, *cf. Bruen*, 597 U.S. at 32 ("[C]onfining the right to 'bear' arms to the home would make little sense given that self-defense is the *central component* of the [Second Amendment] right itself.") (cleaned up, citation omitted).

Thumbing their noses at *Rahimi*, Plaintiffs suggest that this court's preliminary rationale should proceed as follows: because today's legislatures deem 18- to 20-year-olds (an age bracket they invented) "adults" in several respects (but not others), courts should ask whether the Founding generation would have tolerated a restriction on the Second Amendment conduct of individuals

who their legislatures deemed adults. [ECF 27–1] ("Plaintiffs and all those similarly situated are legal adults … [and] are not aware of any law from any potentially relevant period that singled out the firearm rights of legal *adults* for restrictions based on their being younger than other legal adults."). Further, because the UFA's age restriction lacks a historical "twin," its fate is sealed. [*Id.* at 15] (framing the inquiry around the existence of discrete "regulations restricting minors' ability to possess or purchase weapons"),[8] Plaintiffs essentially encourage an homage to the Fifth Circuit's methodological misstep in *Rahimi*, and seek a law "trapped in amber."

At this stage, however, this Court need only recognize that history reveals "a principle, not a mold," *Rahimi*, 602 U.S. at 740 (Barrett, J., concurring), and that level of generality questions are not so cut-and-dry. *See id.* at 739 (Barrett, J., concurring) (identifying the "level of generality problem"); *id.* at 745 (Jackson, J., concurring) (noting that "the level of generality at which a court evaluates [historical] sources" has not yet been "adequately clarified"). An unbroken thread of history and tradition from 1791, through 1868,[9] and until today demonstrates that legislatures have regulated—*i.e.*, burdened—the use of firearms on the basis of age.

    b.   <u>States historically justified burdens on minors' Second Amendment rights on similar grounds</u>

Understanding *Bruen* and *Heller* requires a recognition that the laws struck down in those cases were outliers. *Bruen*, 597 U.S. at 13 (comparing New York's "may issue" law to the "shall

---

[8] *Contra Bondi*, 2025 WL 815734, at *13 (rejecting "as contrary to Supreme Court precedent" the view that "we must rely on firearm-specific regulations from the Founding era and cannot consider the common law of contracts that governed minors").

[9] Commissioner Paris recognizes that in *Lara*, 91 F.4th at 134, the Third Circuit has held, in part, that the relevant time period to look to for historical analogues is the Founding Era, circa 1791, not when the Second Amendment became applicable to the states *via* the ratification of the Fourteenth Amendment in 1868. Nonetheless, Commissioner Paris advances this line of argument in good faith and in the interest of preservation of all arguments, given the ongoing scholarly debate regarding the persuasive authority of the respective "Foundings" and their laws.

carry: laws of 43 States, which the Court presumes are constitutional); *Heller*, 554 U.S. at 629 ("Few laws in the history of our Nation have come close to the severe restrictions of the District's handgun ban"). By contrast, both restrictions on concealed carry without a permit and age restrictions related to Second Amendment activities are widespread. No fewer than 21 states require a permit to carry a concealed firearm, and 18 of the 29 states that allow concealed carry without a permit require an individual to be 21 years of age to do so.[10]

This ubiquity is unsurprising. As the Eleventh Circuit recently explained, "[t]he Founders' generation shared the view that minors lacked the reason and judgment necessary to be trusted with legal rights." *Bondi*, 2025 WL 815734, at *6. From Gouverneur Morris claiming that minors "have no will of their own," to Thomas Jefferson equating them to "maniacs" and "drunkards," to John Adams explaining that they lacked "[j]udgment" and "[w]ill," *id.* (citations omitted), historical justifications provide ample support for modern firearm regulations based on age. Like their forbearers in the 18th and 19th centuries, Pennsylvanians determined that exercising certain legal rights—here, the right to carry concealed—requires some modicum of maturity. That such determinations have been distinctly within the province of the legislature, and that legislatures since time immemorial have raised and lowered age requirements for various privileges based upon their understanding of human development, is enough to satisfy *Bruen* and *Rahimi* at this procedural stage.[11]

---

[10]    *See*    https://everytownresearch.org/rankings/law/concealed-carry-permit-required/; https://www.usconcealedcarry.com/resources/terminology/types-of-concealed-carry-licensurepermitting-policies/unrestricted/.

[11] Plaintiffs invoke the Eighth Circuit's observation in *Worth* that, "[f]or political rights, the Twenty-Sixth Amendment sets the age of majority at 18." [ECF 27–1 at 17] (citing *Worth*, 108 F.4th at 692). Ironically, the fact that this change contemplated a category of rights not implicated here, and that a *constitutional amendment* was required to supersede state legislation undermines their point. Ages of majority wax and wane for various rights through the democratic process, *see,*

**B.    Plaintiffs cannot demonstrate they would suffer an irreparable harm if the Court allows the continued enforcement of this Commonwealth's laws regulating the issuance of concealed carry permits.**

A movant seeking a preliminary injunction must demonstrate that he is likely to suffer harm if an injunction is not granted, *Ferring Pharm.*, *Inc.*, *v. Watson Pharm. Inc.,* 765 F.3d 205, 217 (3d Cir. 2014), *holding modified by Reilly v. City of Harrisburg,* 858 F.3d 173 (3d Cir. 2017), and the "requisite feared injury or harm **must be irreparable  not merely serious or substantial**." *Glasco v. Hills*, 558 F.2d 179, 181 (3d Cir. 1977) (emphasis added). Accordingly, Plaintiffs must also show that the "potential harm . . . cannot be redressed by a legal or equitable remedy following trial." *Instant Air Freight Co. v. C.F. Air Freight, Inc.*, 882 F.2d 797, 801 (3d Cir. 1989) (emphasis added).

Here, Plaintiffs have failed to articulate any real harm that will befall them if an injunction is not granted. Neither individual Plaintiff has averred that she even owns a concealable firearm, thus necessitating a conceal-carry license. Instead, Plaintiffs baldly argue that they are "left with no avenue to exercise their fundamental right…to carry a firearm for self-defense in public." [ECF 27-1 at 18]. Plaintiffs' argument is unavailing because it presumes an unlawful deprivation has occurred without any substantial evidence to support the presumption. And it skirts the Third Circuit's recent instruction that constitutional harms are not presumed to be irreparable outside the First Amendment context. *See Delaware State Sportsmen's Ass'n, Inc.*, 108 F.4th at 203–4 ("Even as some courts presumed constitutional harms irreparable, we still favored 'traditional prerequisites for injunctive relief' over categorical presumptions.") (citation omitted).

---

*e.g.*, *Bondi*, 2025 WL 815734, at *10 ("When World War II necessitated lowering the conscription age to 18, *states* lowered the age of majority too.") (emphasis added)—not, traditionally, by judicial fiat that an adult in one context must be considered an adult for all purposes.

That neither Palmaccio nor Young have averred that they own concealable firearms is unsurprising, given that federal law prohibits federally-licensed dealers from selling handguns to under 21-year-olds. 18 U.S.C. § 922(b)(1).

The UFA does not infringe upon Plaintiffs' right to bear arms because they can openly carry firearms across this Commonwealth, with the exception of Philadelphia. *Commonwealth v. Hawkins*, 547 Pa. 652, 657, n. 4 (1997). Plaintiffs, accordingly, take aim at the Commonwealth's laws regulating the transport of firearms,[12] attempting to support their facial attack on this Commonwealth's age restrictions on the issuance of concealed carry permits. Plaintiffs claim that without concealed carry permitting, they would not be able to circumvent these regulations.

Since Plaintiffs have failed to establish either of the two threshold elements required for a preliminary injunction, the Court must deny Plaintiffs' requested relief. Moreover, issuing a temporary restraining order or preliminary injunction preventing the enforcement of the Commonwealth's public safety laws would harm the public's interest.

### C.    The balance of equities and the public interest are not served by granting a preliminary injunction.

Plaintiffs must also demonstrate that the issuance of a temporary restraining order or preliminary injunction serves the public's interest. *Ortho Pharmaceutical Corp. v. Amgen, Inc.*, 882 F.2d 812-13 (3d Cir. 1989). While Plaintiffs argue "the enforcement of an unconstitutional

---

[12] It is worth noting that Section 6106 of the UFA was found facially unconstitutional to the extent it prohibited unlicensed individuals from carrying firearm in their vehicle. *Suarez v. Paris*, 741 F. Supp. 3d 237, 258–59 (M.D. Pa. 2024). The District Court in that case stayed its final order to the extent that it enjoined Defendants in that case from enforcing Section 6106. A copy of the Order in that case is attached hereto and marked as Exhibit B.

The Third Circuit then denied a motion to lift the District Court's stay by order dated October 23, 2024. *See Suarez v. Paris*, No. 24–2602, [ECF 19] ("the District Court did not abuse its discretion in considering the balancing of equities and the public interest"). It simultaneously granted the Commissioner's motion to hold the appeal in *Suarez* pending a decision in *Koons v. Attorney General of New Jersey*, Nos. 23–1900, 23–2043. *See id.*

law vindicates no public interest," *K.A. ex rel. Ayers v. Pocono Valley Mountain School Dist.*, 710 F.3d 99, 114 (3d Cir. 2013), Plaintiffs again presume the permitting regulations' unconstitutionality, and that they have accordingly demonstrated a likelihood of success on the merits and irreparable injury. *See* Doc. 8 at 23, citing *Issa v. Sch. Dist. of Lancaster*, 847 F.3d 121, 143 (3d Cir. 2017). For the reasons explained *supra*, they have not.

Moreover, the public's interest cautions against granting Plaintiffs' requested relief. Data demonstrates that in 2022, permitless concealed carry states experienced "27 percent more deaths and injuries in road rage incidents involving a gun than states that required a permit but did not give law enforcement broad authority to deny an application"; "[s]tates that have weakened their firearm permitting system have experienced a 13-15 percent increase in violent crime rates" and "[i]n a national survey, 39 percent of firearms owners reported they never received formal firearms training." *See* *https://www.everytown.org/solutions/strong-standards-for-carrying-concealed-guns-in-public/*. Additionally, "a robust body of academic literature shows that the human brain continues to develop well past the age of 21, particularly in areas that may alter a person's likelihood of involvement in violence." https://giffords.org/lawcenter/gun-laws/policy-areas/who-can-have-a-gun/minimum-age/. Thus, allowing individuals between 18 and 20 years of age to concealed carry substantially increases risk to society and themselves.

Individuals similarly situated to Plaintiffs will also rely on any injunction issued by this Court and seek a concealed carry permit. However, when the Commonwealth's laws and regulations are inevitably held constitutional, those individuals will have to conform to those safety measures and face potential prosecution if they fail to cease carrying concealed firearms, resulting in confusion and mischief.

Finally, any attempt to unwind or retract these permits will inevitably place local law enforcement in potentially dangerous situations, taxing their materiel and manpower.

## II.    JUDICIAL ESTOPPEL BARS INSTITUTIONAL PLAINTIFF, FIREARMS POLICY COALITION, INC., FROM ARGUING THAT THEY NEED ADDITIONAL INJUNCTIVE RELIEF TO VINDICATE THEIR RIGHTS

Organizational Plaintiff, Firearms Policy Coalition, Inc. ("FPC"), claims in support of its Motion for a Preliminary Injunction that "[t]he harm here is irreparable: Plaintiff's and all similarly situated, law-abiding 18-to-20-year-olds are broadly restricted from exercising their fundamental right to carry firearms for self-defense and other lawful purposes in Pennsylvania. Absent an injunction, nothing else this Court could do at the end of the case would remedy the ongoing harm to Plaintiffs for the deprivation of their constitutionally protected rights." [ECF 27-1 at 18]. Due to this alleged harm, Plaintiff seeks to enjoin Defendants from "continuing to enforce the challenged provisions."[13] Organizational Plaintiff is judicially estopped from making this argument because in *Lara*, FCP represented to the Third Circuit that "they are agnostic as to whether they [carry a firearm] concealed or openly." Reply Br. at 4 (3d Cir. ECF 38).

"The doctrine of judicial estoppel serves a consistently clear and undisputed jurisprudential purpose: to protect the integrity of the courts." *TAKTL, LLC v. IWR, N. Am., LLC*, No. 2:18CV1546, 2024 WL 4753962, at *1 (W.D. Pa. Nov. 11, 2024)(quoting *McNemar v. Disney Store, Inc.*, 91 F.3d 610, 616 (3d Cir. 1996)). Three requirements must be satisfied before a court properly can apply judicial estoppel. "First, the party to be estopped must have taken two positions that are irreconcilably inconsistent." *Montrose Medical*, 243 F.3d at 779 (citing *Ryan Operations G.P. v. Santiam–Midwest Lumber Co.*, 81 F.3d 355, 361 (3d Cir. 1996)).[14] Second, that party must

---

[13] It is Defendant Paris' interpretation that the "challenged provisions" refer to 18 Pa.C.S.A. §§6106, 6108, and 6109.

[14] That *Lara* concerned different *individual* plaintiffs is of little relevance for judicial estoppel purposes. Upon that narrow reading of the concept, an organizational plaintiff—such as the

have "changed his or her position 'in bad faith—i.e., with intent to play fast and loose with the court.' " *Id.* Finally, application of the sanction must be "tailored to address the harm identified" and it must be clear that "no lesser sanction would adequately remedy the damage done by the litigant's misconduct." *Id.* (quoting *Klein*, 185 F.3d at 108).

Here, it is clear that FCP has espoused two contradictory positions. This pivot could only have been contrived to play fast and loose with the Court, and in the hopes that the public record of previous arguments would not be discovered before FCP obtained whatever it sought. Finally, an appropriate "sanction" need not be tailored when an easy solution already fits – Plaintiffs' Motion for PI should be denied.

## III. DISCOVERY IS NECESSARY IN THIS MATTER AND REVIEW OF THIS CASE SHOULD NOT BE EXPEDITED

First, Defendant is entitled to conduct discovery on Plaintiff's jurisdictional allegations, and to test the jurisdictional evidence presented by Plaintiffs in support of those allegations.

### A.    Jurisdiction is a fact-bound inquiry that can require discovery.

It is well-established that federal courts are powerless unless they have jurisdiction. *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1998). It is also well-established that for jurisdiction to exist, a plaintiff must have "standing to sue." *Id.* at 102. Standing, in turn, requires (1) an "injury in fact"; (2) "causation—[i.e.,] a fairly traceable connection between the plaintiff's

---

Firearms Policy Coalition—could effectively take as many positions in as many cases as it has members, without any regard for their consistency. Wielding this equitable doctrine to "prevent improper use of judicial machinery," *In re Kane*, 628 F.3d 631, 639 (3d Cir. 2010) (quoting *New Hampshire v. Maine*, 532 U.S. 742, 749 (2001)), is well within a court's discretion, and particularly suited to cases in which the applicable law is in flux. *See United States v. Dorsey*, 105 F.4th 526, 530 (3d Cir. 2024) ("*Bruen* represented a sea-change in Second Amendment jurisprudence."); *Fraser v. ATF*, No. 22-CV-410, 2023 WL 5617894, at *3 (E.D. Va. Aug. 30, 2023) ("In sum, this area of law is in flux.").

[alleged] injury and the complained-of conduct of the defendant"; and (3) "redressability—[i.e.,] a likelihood that the requested relief will redress the alleged injury." *Id.* at 103.

"[T]he party invoking federal jurisdiction"—i.e., the plaintiff—"bears the burden of establishing its existence." *Id.* at 104. Oftentimes the defendant does not challenge the plaintiff's jurisdictional allegations; those allegations are accepted as true; and the court proceeds. *See Gould Elecs. Inc. v. United States*, 220 F.3d 169, 177 (3d Cir. 2000). But "[i]f the defendant contests any allegations in the pleadings, by presenting evidence, the court must permit the plaintiff to respond with evidence supporting jurisdiction" and then "determine jurisdiction by weighing the evidence presented by the parties." *Id.* at 177.

As just explained, these pre-merits jurisdictional proceedings require the "weighing [of] ***evidence***." *Id.* (emphasis added). But evidence, of course, is "typically obtained through discovery." *Singh v. Uber Techs. Inc.*, 939 F.3d 210, 216 (3d Cir. 2019). For that reason, "[p]arties are entitled to a fair opportunity to engage in jurisdictional discovery to obtain facts necessary for ***thorough*** consideration of the jurisdictional issue." *Shouse v. Nat'l Corrective Grp., Inc.*, 2011 WL 1376403, at *2 (M.D. Pa. Apr. 12, 2011) (emphasis added) (cleaned up).

**B.    Jurisdictional discovery is required here.**

As just explained, Plaintiffs can only maintain this lawsuit if they can show injury, causation, and redressability. In other words, they must be able to demonstrate that Sections 6106, 6108, and 6109 are actually preventing them from carrying as they wish to carry, and that overturning those laws will actually permit them to carry as they wish. *Cf. Suarez v. Paris*, 2024 WL 3521517, at *4 (M.D. Pa. July 24, 2024) ("In pre-enforcement contexts, the injury-in-fact prong tasks the court to consider whether a plaintiff alleges an intention to engage in a course of

conduct arguably affected with a constitutional interest, but proscribed by a statute . . . ." (cleaned up)).

As explained above, Sections 6106 and 6108 prohibit carrying firearms in certain circumstances without a license, and Section 6109 requires individuals to be 21 years of age to obtain that license. But as also noted above, Section 6106 contains **numerous** exceptions to the licensure requirement, which exceptions are incorporated by reference into Section 6108.

Plaintiffs make various allegations regarding when, where, and how they would like to carry their firearms. But many of those allegations appear deliberately crafted to skirt the application of an exception—and thus establish causation, redressability, standing, and, ultimately, jurisdiction. For example, Section 6106 exempts individuals carrying an unloaded firearm "to or from . . . target practice." 18 Pa. C.S. § 6106(b)(4). All three Individual Plaintiffs allege that they wish to carry an unloaded firearm "to or from . . . a range [and] target shooting." ECF No. 1 ¶¶ 40.a; 54.a; & 68.a. But all three Individual Plaintiffs *also* allege that they would like to "stop for a bathroom break[], food, [or] coffee, or . . . pick up or drop off a friend" on that journey. It does not appear that any court has weighed in on whether an individual is still going "to or from . . . target practice" if they stop for a candy bar on the way. But a court needs factual information about the nature of those frolics and detours to make that determination. *Cf. Commonwealth v. Gunter*, 2024 WL 2048719, at **1, 3 (Pa. Super. Ct. 2024) ("[T]he *evidence* did not establish the target practice affirmative defense" where the defendant "left [a] gun show" and "drove around very briefly before returning[.]" (emphasis added)). Defendant, therefore, should be permitted to conduct discovery to obtain that information.

And allegations related to many of the exceptions are entirely missing. For example, Section 6106 entirely exempts law-enforcement officers, federal officers and employees that are

authorized to carry a concealed firearm, and individuals licensed by certain other states. 18 Pa. C.S. § 6106(b)(1), (5), (15). None of the Individual Plaintiffs deny being eligible for these exemptions (and their silence, in light of the detailed nature of their other allegations, seems curious). But if they were eligible, they would not be subject to the license requirement of Sections 6106 and 6108; would thus lack injury and standing; and so no jurisdiction would exist. Again, Defendant should be permitted to conduct discovery to obtain that information.

Finally, and more fundamentally, Defendant should also be permitted to test all the affirmative jurisdictional statements that are made in the Individual Plaintiffs' affidavits.[15] [ECF Nos. 27-4, 27-5]. In this lawsuit, Plaintiffs seek to completely invalidate a decades-old limitation on the carrying of firearms in this Commonwealth. Yet they have not answered a single interrogatory, responded to a single document request, or sat for a single deposition. Instead, they rest entirely on a few pages of (often-duplicative and largely formulaic, but undoubtedly carefully crafted) typed-out assertions. This submission seems hardly sufficient to prove that Plaintiffs have "such a personal stake in the outcome of the controversy as to assure that concrete adverseness which sharpens the presentation of issues upon which the court so largely depends for illumination of difficult constitutional questions[.]" *Baker v. Carr*, 369 U.S. 186, 204 (1962).

### C.    Defendant may wish to conduct expert discovery.

Second, Defendant should be entitled to present expert testimony regarding the history of firearms limitations applicable to individuals under the age of 21, if he determines such expert testimony is necessary.

In *New York State Rifle & Pistol Association, Inc. v. Bruen*, 597 U.S. 1 (2022), the Supreme Court established a two-step test for courts to use when determining whether firearms regulations

---

[15]    These statements essentially mirror the jurisdictional allegations from the Complaint.

violate the Second Amendment. The court should first determine whether "the Second Amendment's plain text covers an individual's conduct." *Id.* at 17. Second, if it does, "the government must [then] demonstrate that the regulation is consistent with this Nation's historical tradition of firearm regulation." *Id.*

The *Bruen* decision resulted in a spate of litigation challenging firearms regulations. In some of those cases, expert testimony has been used to explore "this Nation's historical tradition of firearm regulation" at *Bruen*'s second step. *Id.* In *Oregon Firearms Federation v. Kotek*, 682 F. Supp. 3d 874, 900 (D. Or. 2023), for example, both the plaintiff and the government-defendant relied on historical experts. *See id.* at 899–901; *see also id.* at 901 (holding that the government-defendant's "neutral historical experts [were] significantly more credible—and entitled to more weight—than" the plaintiff's expert, who "lack[ed] background and training as a historian"; "ha[d] both professional and personal ties to pro-gun groups and the firearms industry"; had "received numerous awards from pro-gun advocacy groups"; had "co-founded a research center that advocate[d] for the firearms industry and denounce[d] gun regulation"; and had "a strong financial interest in the success of the firearms industry" through her husband, who "spent decades working for gun dealers and gun manufacturers" and "own[ed] over one million dollars in stock in Ammo, Inc.").

Defendant may wish to utilize similar expert testimony. Thus, in addition to permitting a period of jurisdictional fact discovery, this Court should also permit sufficient time for Defendant to fully evaluate and ascertain the need for expert testimony; to locate and evaluate appropriate expert(s); and to prepare the necessary disclosure(s) associated with such expert(s).

## CONCLUSION

This Honorable Court must not grant Plaintiffs' requested relief. Plaintiffs cannot establish a likelihood of success on the merits. Likewise, Plaintiffs cannot establish they have or will suffer an irreparable harm, as no constitutional violation has occurred. Finally, Plaintiffs cannot demonstrate that a preliminary injunction or temporary restraining order would serve the public's interest, as it would place third parties in jeopardy of life, limb, and the law. Their Motion must be denied.

Defendant Paris relies on the legal arguments above to challenge Plaintiffs' Motion for Preliminary Injunction, however, should this Honorable Court find the legal arguments insufficient, Defendant Paris would reserves the right to present evidence in support of these arguments at a hearing. Defendant Paris maintains his objection to a hearing on the preliminary injunction being conducted as an expedited consolidated hearing on the merits of this case.

WHEREFORE, Defendant Paris submits that Plaintiffs' Motion for Preliminary Injunction, Expedited Consolidation with the Merits or, in the alternative, Summary Judgment should be denied.

<div style="margin-left:40%">

Respectfully submitted,

DAVID W. SUNDAY, JR.
Attorney General

By:    *s/Amelia J. Goodrich*
_____
AMELIA J. GOODRICH
DEPUTY ATTORNEY GENERAL
Attorney ID: 327192

NICOLE R. DITOMO
Chief Deputy Attorney General
Civil Litigation Section

*Counsel for Colonel Christopher Paris*

</div>

Office of Attorney General
1251 Waterfront Place, Mezzanine Level
Pittsburgh, PA 15222
Phone: (412) 510-1418
Email: agoodrich@attorneygeneral.gov

Date: March 25, 2025

## CERTIFICATE OF SERVICE

I, Amelia J. Goodrich, Deputy Attorney General for the Commonwealth of Pennsylvania, Office of Attorney General, hereby certify that on March 26, 2025, I caused to be served a true and correct copy of the foregoing document titled *BRIEF IN OPPOSITION TO PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION, EXPEDITED CONSOLIDATION WITH THE MERITS OR, IN THE ALTERNATIVE, SUMMARY JUDGMENT* to the following:

**VIA ELECTRONIC SERVICE**

**Gary F. Seitz, Esquire**
Gellert, Seitz, Busenkell & Brown, LLC
1201 N. Orange Street
Wilmington, DE 19801
gseitz@gsbblaw.com
*Counsel for Plaintiffs*

**Sean P. McDonough, Esquire**
Dougherty, Leventhal & Price
75 Glenmaura National Boulevard
Moosic, PA 18507
smcdonough@dlplaw.com
*Counsel for Brian Szumski*

**David H. Thompson, Esquire**
**Athanasia Livas, Esquire**
**Peter Patterson, Esquire**
**William Bergstrom, Esquire**
Cooper & Kirk, PLLC
1523 New Hampshire Avenue, N.W.
Washington, D.C. 20036
dthompson@cooperkirk.com
alivas@cooperkirk.com
ppatterson@cooperkirk.com
wbergstrom@cooperkirk.com
*Counsel for Plaintiffs*

 *s/ Amelia J. Goodrich*
**AMELIA J. GOODRICH**
Deputy Attorney General